INHABITANTS OF BLACKSTONE *vs.* MILLENS A. TAFT & others.

An action on the bond of a collector of taxes, brought by authority of the town treasurer, in the name of the town to whom it was made, may be maintained without proof of a formal vote of the town authorizing the action.

The want of assent of a school district to a vote of the town uniting it with another school district is no objection to the validity of a school district tax assessed by the united district.

It is no objection to the validity of a school district tax assessed at a meeting called by the prudential committee, appointed by concurrent votes of the town and school district, that the town did not vote, at the annual meeting in that year, if it had the year previous, that teachers should be selected and contracted with by the prudential committee, pursuant to *St.* 1839, *c.* 137.

An appointment by selectmen, of a collector of taxes, " in place of J. S., deceased," is a valid appointment, under *St.* 1838, *c.* 43, to hold until another is chosen, although that limitation be not expressed in the appointment.

A school district valuation, which is expressly " based on the town valuation " for the same year, need not contain any description of real estate and machinery taxed, if it appears by the correspondence between the figures opposite the names of each person in the two valuations, and by the description in the town valuation, that the property was situated within the school district.

An assessment of a school district tax on a lot of land, part of which does not lie within the district, is void as to the whole of that lot; but this does not affect the validity of the assessment, in the same valuation, of other lots within the district, to the same owner, by separate descriptions.

A school district tax on real estate and machinery situated within the district, and belonging to an inhabitant of the town, though not of the district, may be assessed either to him, or to the tenant.

ACTION OF CONTRACT on a bond made to the plaintiffs by Millens A. Taft as principal, and the other defendants as his sureties, and conditioned that he should faithfully collect, account for and pay over all the taxes which he should be legally required to collect, and also discharge with diligence and fidelity the other duties of the office of collector of the town of Blackstone for 1851. The breach alleged and relied on was, the failure to collect a portion of a school district tax, duly voted and assessed by the tenth school district, being the portion assessed on Welcome Farnum, in respect of real estate and machinery belonging to him, and lying within the district, and on Dan Hill, in respect of real estate belonging to him within the district, Farnum and Hill being both inhabitants of Blackstone, but not residing within this district. Trial in the court of common pleas, before

*Mellen*, J., to whose rulings the defendants alleged exceptions. The facts of the case, so far as they are material to the understanding of the points of law decided, are stated in the opinion, which was delivered at September term 1856.

*P. C. Bacon & F. Deane*, for the defendants.

*E. Washburn & P. P. Todd*, for the plaintiffs.

DEWEY, J. Various objections are taken to the right of the plaintiffs to maintain the present action. 1. It is insisted that the action cannot be maintained because the town of Blackstone has not, by any formal vote, authorized the institution of the same. But we are of opinion that, in reference to a suit upon a bond given by a collector of taxes, it is sufficient if the suit be authorized by the town treasurer, and the authority or consent of the town, so far as the same is necessary, may be presumed, nothing to the contrary appearing.

2. The next objection is, that the district No. 10 is not a legally constituted district; the union of districts No. 10 and No. 11, and the merger of the latter, being unauthorized by law. The principal ground relied upon for maintaining this proposition is, that it was not competent for the town to annihilate district No. 11, or to annex it to No. 10, without the assent of both districts. Some apparent countenance to this view is found in the opinion of the court in *Waldron* v. *Lee*, 5 Pick. 323. But whatever might have been the view there taken of the power of the towns as to changes in the school districts, more recent legislation and judicial decisions would seem to leave no doubt as to the power of the town to annihilate a district by annexing it to another, under the circumstances under which this took place *School District in Stoneham* v. *Richardson*, 23 Pick. 68. Rev. Sts. *c*. 23, § 24. *Fry* v. *School District in Athol*, 4 Cush. 250. It may be true that such annihilation of a district by a vote of the town might be wholly inoperative as to third persons, between whom and the district any contract or liability existed; and the district might still be holden as to such contract or liability. But as to the future, and all matters arising after such annexation, we see no objection to the validity of a vote of the town, annexing one entire school district to another school

district. It appears in the present case to have been done upon the application of individuals belonging to district No. 11, and the vote acquiesced in by district No. 10, by the practical union which at once took place and has ever since continued, for a period of a year and a half.

3. It is said that this tax was illegal because the meeting of the school district, held on the 9th of August 1851, at which the money was voted for which this tax was assessed, was not legally called. The objection is, that the three persons acting as a prudential committee, and who called the meeting, were not legally chosen. It appears, by the report of the facts, that the town of Blackstone had, at their annual meeting in 1850, voted that the prudential committee be authorized to contract with their school teachers, and had thus, as to that year, brought themselves within the provisions of *St.* of 1839, *c.* 137, authorizing, in such cases, the appointment by the town of three persons as a prudential committee. The vote of 1850 was not, in form, reaffirmed in 1851; but the town did in fact, at their annual meeting in that year, proceed to elect three persons as a prudential committee for school district No. 10, and the same persons, as appears by the bill of exceptions, were also chosen to the same office by the school district No. 10. Under these votes, these persons assumed the office of prudential committee, and acted as such in all matters appertaining to the district. Perhaps it would not be going too far to say that the town, by proceeding to appoint three persons as a prudential committee for district No. 10, did virtually reaffirm the vote of 1850, and determine that the teachers for the district be selected by the prudential committee, as otherwise the town had no authority to appoint three persons to be the prudential committee; or it might be considered that a vote like that of 1850, not being restricted in terms to the current year, might be taken to be a standing vote or determination of the town until it was rescinded.

However this may be, there is yet the further answer to the objection that this meeting was not legally called, that, upon the question of the legality of an assessment of a school tax, it would be sufficient if the meeting was called by those who

were the prudential committee *de facto.* This seems to be directly decided in *Williams* v. *School District in Lunenburgh*, 21 Pick. 80.

4. It is then objected that the defendant Millens A. Taft was not duly appointed collector of taxes. The objection arises from the terms of his written appointment, which are supposed not to be sufficiently qualified. The *St.* of 1838, *c.* 43, authorizes the selectmen, in case a vacancy occurs in the office of collector of taxes, to appoint some person thereto, to " hold his office until another is chosen in his place." In the certificate delivered to Taft, he is said to be appointed " collector of taxes for said town of Blackstone, in place of Wm. R. Salisbury, deceased." In the certificate of the appointment filed with the town clerk, the form of the appointment is in correspondence with the statute, the words " until another is chosen " being added. As the appointment could be only until another was chosen in his stead, the certificate of the selectmen, if it professed to appoint him for a longer term, or by any other tenure, would be inoperative, as an appointment beyond their authority, but good to that extent. See *Commonwealth* v. *Higgins, ante,* 34. The defendant was therefore legally appointed collector of taxes ; and it is unnecessary to consider the further question suggested, that the defendants are estopped to set up such defence.

5. The remaining objection to be considered, is that taken to the validity of the assessment of the taxes sought to be recovered of the collector, for the want of a proper valuation precedent to the making of the assessment, and such a one as would create a lien upon the real estate, and enable the collector to enforce the collection of the tax so assessed. It is admitted that the valuation and assessment list of the town for the year 1851 was in legal and proper form ; and the valuation and assessment list of this district, which is contained in the same book, is preceded by the following heading: " School District No. 10. Tax for fifteen hundred dollars, based on the town valuation of 1851." But it is contended that the real estate taxed is not sufficiently described in the district valuation.

As to a valuation in reference to an assessment of a school

district tax, it is to be remarked that there is no provision in the
statutes requiring any distinct valuation to be made of the es-
tates of those liable to taxation in a school district.    The Rev.
Sts. *c.* 7, § 21, require a town valuation of all estates taxable in
such town to be made on the first day of May in each year.
By *c.* 7, § 16, all taxes duly voted and certified by any school
district, as well as all state taxes and county taxes, are to be as-
sessed according to the rules prescribed in that chapter.    By
*c.* 23, § 37, " the assessors of the town shall assess, in the same
manner as town taxes are assessed, on the polls and estates of
the inhabitants of each school district, and on all lands liable to
be taxed therein, all moneys voted to be raised by the inhabitants
of such districts for the purposes aforesaid."    The valuation,
therefore, for the assessment of a school district tax is the town
valuation.    It was held in *Waldron* v. *Lee,* 5 Pick. 323, that a
school district tax might be assessed upon the town valuation.
In *Savary* v. *School District in Georgetown,* 12 Met. 181, it was
said : " The valuation of the polls and estates on the first day
of May will be the valuation in reference to which the tax is to
be assessed."

The only inquiry is, therefore, whether there appears on the
town valuation, upon which this assessment is based, such de-
scription of real and personal estate which is made the subject
of taxation here, as would show for what land or personal estate
the party was liable to be taxed.    If such lands are, by their
description in the town valuation, lands situate within this
school district, they are properly taxable.    So as to machinery
belonging to manufacturing establishments.    *St.* 1850, *c.* 301.
The figures opposite to the name of each person taxed, in the
school district assessment, indicative of the amount of real and
personal estate, may be referred to, as showing the correspon-
dence in amount of the property taxed to that found on the
town valuation as liable to be taxed; but the particular valua-
tion which is to be the designation of the property, the subject
of taxation, will be found in the town valuation.

We understand that there was a valuation of the real estate of
Welcome Farnum duly made in the town valuation, and that in

this valuation are several parcels of land of a value corresponding with that assumed in making this assessment; and that these lands thus assessed, with one exception, are situate within the limits of school district No. 10, and are so described in the town valuation; and that the same is true as to the personal estate assessed on this school tax, it being machinery belonging to a manufacturing establishment.

As to the Sherman lot, which was also made the subject of assessment in this tax, it is admitted that a portion of it was not situate within the limits of school district No. 10; and as the assessment and the valuation both are with reference to this lot as an entirety, and certainly a part of it was not subject to this tax, there could be no valid lien attached to that lot for any part of this tax; and, to the extent of the assessment upon that lot, there was no default in the collector. This will not affect the lien upon the other parcels of land taxed, and which were situate within the limits of school district No. 10; for it was held by this court in *Hayden* v. *Foster*, 13 Pick. 492, that an aggregate tax upon a separate valuation would constitute a lien upon each parcel for its proportion of the tax, such amount being capable of being made certain by the known rate of taxation, though a sale for the aggregate tax would be unauthorized. We see no reason why the tax, so far as assessed upon the land of Welcome Farnum, wholly situate within district No. 10, might not have been enforced by virtue of the lien thereon; nor why the collector, for his default in this respect, should not be chargeable upon his bond.

The tax assessed upon Dan Hill must be settled upon the, same principles. If the three parcels taxed in the school district tax are in fact situate in school district No. 10, and are properly described and valued in the town valuation, so that, upon reference thereto, they could be found and made the subject of distinct liens for their proportions of an aggregate tax assessed upon them, then, as to this tax, the collector was in default in not enforcing the collection of the same.

Nor is there any ground for the objection that the tax should have been set to the tenants rather than to the owner of the

property. By the Rev. Sts. *c.* 7, § 7, all taxes on real estate shall be assessed to the person who shall be either the owner or in possession thereof.

· Upon the whole case, the plaintiffs are entitled to judgment for the penalty of the bond; but execution must issue for the amount which shall be found due upon an application of the principles stated in the preceding opinion.